REINHARD, P. J., and GUNN and CRIST, JJ., concur.

**ST. LOUIS POLICE OFFICERS' ASSOCIATION, a Not-for-Profit Corporation, William Vorbeck, Walter Otten, Donald Strate, John Dolan and Gerald Haley, Appellants,**

v.

**Theodore McNEAL, Edward J. Walsh, Jr., Joseph G. Stewart, Salees Seddon and John Poelker, Members of the Board of Police Commissioners, City of St. Louis, Missouri, Respondents.**

No. 37864.

Missouri Court of Appeals, Eastern District, Division Four.

May 29, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 13, 1979.

Application to Transfer Denied Sept. 11, 1979.

London & Greenberg, C. John Pleban, St. Louis, for appellants.

Jack L. Koehr, City Counselor, Charles M. Kunderer, St. Louis, for respondents.

ALDEN A. STOCKARD, Special Judge.

In their petition for a declaratory judgment and injunctive relief, the plaintiffs alleged:

(a) St. Louis Police Officers' Association is a not-for-profit corporation, organized and existing under the laws of the State of Missouri and chartered for the purpose, among others "To mitigate the hazards of the work of police officers, to advance workable programs for improved working conditions and conditions of employment, to further measures of excellence in and for their happiness and equal opportunity with all persons, and the moral and spiritual satisfaction for member officers, their dependents and all people in their public care."

(b) The association has a membership of approximately 1,850 commissioned police officers, including the five persons named as plaintiffs, which constitutes more than 80% of all commissioned personnel of the St. Louis Police Department.

(c) The named defendants comprise the Board of Police Commissioners of the City of St. Louis, (hereafter referred to as "the Board") which is vested by the State of Missouri with general administrative and supervisory control over the St. Louis Police Department, and in accordance with its duties and authority the Board has set out in its "Police Manual" the following criteria for promotion within the Police Department:

"8.201 Promotions—When any vacancy shall take place in any grade of officers,

it shall be filled from the next lowest grade except as may be provided for in the selection of Chief, Assistant Chief and Inspector. Promotions shall be made according to fitness and merit, as determined by the Board."

(d) Each of the individual plaintiffs, is commissioned and employed as an officer of the St. Louis Metropolitan Police Department. Each accepted employment and continued his employment within the Police Department in reliance upon the representation by the Police Department that promotions would be made according to "fitness and merit."

(e) The Board has failed and refused to define "fitness and merit" as used in the said rule, and police officers and these individual plaintiffs have not been provided "with objective criteria by which they can determine whether or not they are eligible for promotion."

(f) Despite plaintiffs' many requests that the Board publish a list indicating the respective standings of officers competing for promotion, the Board has refused and declined to do so, but has promoted officers "upon considerations and standards not consistent with Rule 8.201, * * * and officers have been promoted upon criteria other than fitness and merit including, but not limited to, political and racial considerations and the Police Department has therefore refused and neglected to carry out the aforesaid agreement to base promotions on fitness and merit, all to the extreme detriment and injury of these plaintiffs."

(g) By reason of the refusal of the Board to set forth "definite objective criteria for promotion," police officers and particularly the individual plaintiffs "have been prevented from pursuing their contractual rights" and "have been denied equal protection of the law" in that they have been denied "the right and opportunity to compete with other police officers for promotion."

(h) By reason of the foregoing, St. Louis Police Officers' Association has been "jeopardized, restrained and prevented from pursuing its legitimate purposes, under its charter, in that, without definite criteria for promotion within said police department, membership and activities within and for said association is considered to be an adverse factor in determining an eligibility for promotion and said Association has therefore been and unless appropriate action is taken by this Court, will in the future be, restrained and hampered in recruiting membership and pursuing its legitimate purposes."

(i) Unless defendants are permanently restrained and enjoined by this court from making promotions without reference to specific criteria and without benefit of a promotion list indicating the respective standings of officers competing for promotion, "plaintiffs will continue to be deprived of their contractual rights, * * * and of rights and opportunities guaranteed to them under the Constitution of the United States and the State of Missouri."

The prayer is for an injunction restraining and enjoining the defendants "from making promotions within said Police Department until such time as specific criteria are established for said promotions," and until such time as the individual plaintiffs and other police officers are advised of said criteria and of their respective standings with respect to promotion competition. As further and additional relief it is prayed that the court issue its declaratory judgment respecting the rights and obligations of the parties hereto with respect to the necessity for promotion criteria and publication of promotion lists, and for such other relief as to the court may seem just and proper.

The substance of plaintiffs' allegations is that by reason of an express and implied contractual relation between each police officer and the Board they are entitled to have the court (1) require the Board to establish and declare (a) "specific criteria" for promotion of police officers, and (b) the "respective standings" of police officers with respect to eligibility for promotion, and (2) enjoin the Board from making any promotion without reference to the specific criteria and without benefit of the promotion list.

The evidence is quite lengthy. We shall not set it out in detail, but shall set forth those facts as we have found them to be which are necessary to the determination of the issues.

In order to establish a list of officers who are eligible to be considered for promotion, the Board instituted a plan referred to as "The Three Criteria." This plan was set forth in a published report in which it was stated:

"3. The list of officers eligible for promotion shall consist of the upper one-third of the force, with three or more years of service, based on their *comprehensive* scores, which comprehensive scores shall be determined by the following weighting: Proficiency tests 45%, evaluation of performance on the job, record, leadership qualities, etc., 45% and a maximum of 10% for seniority (½% for each year). The eligible list will be made public prior to considering any promotion.

"4. A screening committee composed of three top police administrators shall assist the Board in further reducing the list of eligibles to be considered by the Board to three times the number of vacancies existing in each category. The Board will then make the necessary promotions from that list."

Subsequently, the weight factors were changed to other percentages. Evaluation of performance by officers comprising a screening committee involved consideration of appearance, demeanor, work attitude, dependability, communication skills, professional knowledge, relationship with people, and judgment. The proficiency test score, the score received from the screening committee, and seniority points were used to arrive at a composite score which provided the overall ranking of those eligible for promotion.

In the determination by the Board of those officers to be promoted it did not limit itself to The Three Criteria, but as the trial court found, it also considered the following factors:

(1) The overall good and needs of The Department and the community,

(2) Morale of the Department,

(3) Recommendations of the screening committee,

(4) Personal recommendations of Chief of Police Camp,

(5) Physical condition, including weight, of the officer,

(6) Age of the officer,

(7) Time spent by the officer in his present rank,

(8) Disciplinary action involving the officer,

(9) Commendations earned by the officer,

(10) Educational attainments of the officer,

(11) Leadership qualities,

(12) An effort to strike a balance between promotion of young officers and older officers,

(13) Ability to relate to the community,

(14) The fact of an officer having successfully acted in the rank above the rank he held,

(15) Seniority (In addition to that considered in The Three Criteria),

(16) Possession of special skills required in a given vacancy,

(17) A determination by the Board of the officer best suited for the job,

(18) Street experience, and

(19) Absenteeism.

The trial court also found that officers who made recommendations to the Board considered the following factors, and these factors were therefore indirectly considered by the Board:

(1) Sustained demonstrated ability,

(2) Specialized training or job assignment,

(3) Initiative,

(4) Loyalty,

(5) Job enthusiasm,

(6) Experience,

(7) Recognition to all branches of the Department, and

(8) Intention to promote from diverse assignments.

The trial court found that The Three Criteria evaluation was used by the Board to determine eligibility to be considered for promotion, but that it was not the sole criteria for the selection of those to be promoted. Also, the court found that there was no agreement to consider only The Three Criteria in making promotions, and that plaintiffs have neither a contractual nor constitutional right to be provided in advance with the criteria and factors used by the Board in determining which officers are to be promoted. The trial court also found that the consideration by the Board of those other factors, as herein set out, was permissible because they "fall well within any reasonable definition of the terms 'fitness' and 'merit' * * *."

At trial the evidence ranged over several issues not presented as issues on this appeal. By their first point, appellants limit their contention and assert that the trial court erred (1) in finding that "the use of non-disclosed promotional criteria, including race, by [the] Board did not violate the contractual relationship between appellants and respondents," and (2) in further finding that "the said non-disclosed criteria were in fact disclosed to appellant police officers." Appellants assert that "these findings were not supported by a preponderance of the evidence adduced at trial."

We first note the Association is a named appellant. We do not understand that there is any contention that there was any "contractual relationship" between the Board and the Association concerning the criteria to be used in determining what officers should be promoted, and we find no basis for such a contention if made. In our discussion of the first point the use of the term "appellants" refers to the individuals named as plaintiffs.

In support of their contention that an implied contract came into existence between each police officer and the Board, appellants cite *Francis v. St. Louis County Water Company,* 322 S.W.2d 724, 726 (Mo. 1959) and *Roper v. Clanton,* 258 S.W.2d 283 (Mo.App.1953). In the first case it was stated that the distinction between an express contract and an implied contract "lies in the manner of manifesting mutual assent." The second case simply holds that under certain circumstances a contract between parties may be implied from the circumstances. These two cases state sound legal principles, but neither is particularly helpful in ruling the precise issue presented in this case.

The duty to regulate, control and operate the Police Department is vested by statute in the Board, §§ 84.010–84.340, and it has the duty and authority to make "all such rules and regulations, not inconsistent with sections 84.010 to 84.340, or other laws of the state, as [it] may judge necessary, for the appointment, employment, uniforming, discipline, trial and government of the police." § 84.170.

■ Aside from the issue as to whether the Board could validly contract with individual police officers as to what matters it would or would not take into consideration in making promotions, and thereby impair or limit the broad discretionary powers invested in the Board by statute, we find no agreement or contract that the Board would limit its considerations in determining promotions to The Three Criteria as appellant officers contend. Appellants rely on the provisions of Rule 8.201, and they assert because of the provisions of this rule that when an officer accepted and remained in employment, an implied agreement based on the rule came into existence. But, assuming that some implied agreement was created, the terms thereof would not be as claimed by appellant. The rule states that "Promotions shall be made according to fitness and merit, *as determined by the Board.*" Therefore, the terms of the agreement would not be that only The Three Criteria would be used, but that promotions would be made on fitness and merit *as determined by the Board.* This necessarily means that the Board would consider such factors as it reasonably deemed appropriate under the circumstances and not prohibited by law.

■ We can find no basis whatever to conclude that appellants have either a stat-

utory or contractual right to be provided in advance with the specific criteria or the factors to be employed by the Board in determining which qualified officers are to be promoted. The applicable statute, § 84.-170, vests broad powers in the Board to promulgate rules for the operation and management of the Police Department, and by rule the Board has provided that promotions should be made according to fitness and merit "as determined by the Board." It is not for the courts to decide whether as a matter of policy or improved employee-relations the Board should limit itself to pre-publicized "specific criteria" in making promotions. That determination falls within the legislative function and the discretionary powers granted to the Board by statute. We agree with the trial court that those factors set out above which were considered by the Board in making promotions "fall well within any reasonable definition of the terms 'fitness' and 'merit'."

By reason of the conclusion we have reached above, we need not consider the contention that the trial court erred in finding that the factors other than The Three Criteria were in fact disclosed to appellants.

In their remaining point appellants assert that the trial court erred in its finding (1) that the Board's use of race in the promotional process did not violate their right to equal protection of the law and their right to compete for promotions equally with other officers, and (2) that the use of race in the promotional process did not result in the promotion of officers who were less qualified than officers not promoted.

The trial court found that in some instances officers whose comprehensive score from The Three Criteria was relatively high were passed over for promotion of officers with a lower comprehensive score, but permissible criteria and factors other than the comprehensive score were considered and, therefore, it does not necessarily follow that officers with lower comprehensive scores who were promoted were less qualified than those with a higher comprehensive score who were not promoted. The trial court specifically found that each officer who was promoted during the time under consideration was qualified for promotion. We agree with the trial court that in its determination of merit and fitness for purposes of promotion the Board was not restricted to the consideration alone of the comprehensive score from The Three Criteria.

As indicated in appellants' second point, the precise contention presented on this appeal is limited to the assertion that the consideration of race as one of the numerous other factors denied appellants' right to equal protection of law and resulted in the promotion of officers less qualified than officers not promoted.

The record establishes that in the determination by the Board of which qualified officers should be promoted it took into consideration numerous factors, and it is admitted that in some cases race was one of those factors. The trial court found this to have been improper, but it ruled that there was not evidence that any particular officer was adversely affected by the injection of race as a factor in the promotional process, or that this factor resulted in the promotion of any officer who was less qualified than an officer not promoted.

■ We note that this is not a class action. We have as plaintiffs an association who as such could not be adversely affected by the consideration of race in the promotional process. We also have five individual police officers as plaintiffs, only one of whom testified. There is no evidence that any one of these five officers were passed over for promotion because the Board considered race as a factor in the promotional process. In these circumstances we find no actual controversy between persons whose interests are in fact adverse, and any decree would be advisory only. *Contracting Plumbers Ass'n of St. Louis v. City of St. Louis,* 249 S.W.2d 502 (Mo.App.1952); *Lawyers' Association of St. Louis v. City of St. Louis,* 294 S.W.2d 676 (Mo.App.1956).

■ Since the appeal in this case was taken the United States Supreme Court has handed down its opinion in *Regents of University of California v. Bakke,* 438 U.S. 265,

98 S.Ct. 2733, 57 L.Ed.2d 750 (1978). It would be of questionable value to attempt to set forth here a summary of the ruling in that case, but from the several opinions filed the following principles can be gleaned.

1. The goal of achieving a racially diverse student body, and by analogy a police force, is sufficiently compelling to justify a limited consideration of race, and this would apply to the employment and promotion of police officers.

2. Racial and ethnic classifications are inherently suspect and call for a most exact judicial scrutiny.

3. An employment or promotional program which forecloses consideration of persons on the basis of race which is unnecessary to the achievement of the goal of racial diversity is invalid.

The record before us indicates that on those occasions when race was considered, it was but one of many factors considered in the evaluation process of selecting qualified officers for promotion, and that the Board has not established a "quota system" which forecloses any officer on the basis of race from consideration. We cannot determine from the record in this case that the principles announced in the *Bakke* case have been violated. The Board now has the guidelines therein set forth with which to govern its conduct, and anything further or action by this court would be premature and advisory.

As to St. Louis Police Officers' Association, the petition is dismissed. In all other respects the judgment is affirmed.

DOWD, P. J., and SNYDER, J., concur.